### ANTHONY EVANS v. THE STATE.

No. 3290.   Decided November 1, 1905.

**Murder—Insufficiency of Evidence.**

Where on a trial for murder the evidence failed to show with any degree of satisfaction or conclusiveness that the child alleged to have been killed was born alive, or was alive at the inception of its birth, the evidence was insufficient to sustain a conviction.

Appeal from the District Court of Marion. Tried below before Hon. P. A. Turner.

Appeal from a conviction of destroying the vitality of a child in state of being born, etc.; penalty, five years imprisonment in the penitentiary.

The evidence of the State showed that defendant was the illegitimate father of the child, the life of whom he was alleged to have destroyed. The mid-wife, or person who was called in to deliver the child, testified that when she arrived the head, arms and a part of the body of the child were protruding from the mother, but she had not delivered it from its hips down; that the top of the head of the child was bruised. * * * The skin had blubbered out just like somebody had bruised it; the whole skull of the child was bruised, etc.; that she saw no mark or signs of any kind on its throat; that the mother was shivering with cold, and was not conscious; that she aroused her after a while, and caused her to give birth to the child; that defendant and his wife were present; that there was no lamp in the room, and she had to see by the fire; that the child was a well developed nine-months child; that the child was dead when witness arrived, but it was the opinion of witness that its head was crushed while it was being born; that the mother of the child died the same day; that she was doing well when witness left; that defendant never said anything to witness about the cause of the child's death, except when she told him about the child being born dead, he said that he did not think that it was any use to disturb the whole country about this baby. * * * She told him that they were going to punish him for not getting somebody to wait on the mother when the child was delivered, he answered that he could not come after witness because he wanted to get a doctor, and that his wife was afraid to stay by herself.

The post mortem examination which was made after the child was exhumed showed that the head of the child had been crushed, and there seemed to be bruises about the neck; that the skull was mashed and the bones broken, and the brains were all in a pulp; that its head was a perfect sack; that it was a full grown child; its finger nails were grown. It could not be shown whether the child had been born alive or not; that there had been no examination of the lungs; that the injuries discovered could have been received before the birth of the head of the child; that it could not have been caused by parturition; that in the opinion of the physician the head of the child was crushed while it was being born or afterwards; that it was possible for the head to have been crushed while it was in its mother, and it indicated that somebody must have crushed it; that the spots around the neck looked like bruises and in the opinion of the physician were made while the child was being born; that the injury to the skull was caused by some external violence; that decomposition had not set in; that the child would have been born alive in the opinion of the physician but for the injuries stated; that there was no way

by which one could tell whether the child was alive before its mother gave birth to it; that there is but one way to tell that the child had ever lived and that is by an examination of the lungs; that no injury that the mother could have received could have got the child's head in the shape it was.

There were other circumstances in evidence with reference to conversations between defendant and the mother of the dead child; that he wanted her to stay with him and told her not to say that he was the father of the child, etc. That the mother had fallen on the ice and hurt herself a short time before the birth of the child with which she was then pregnant, etc., etc. That the mother of the dead child was the stepdaughter of the defendant and lived with him; that she went away and that he forced her to come back; that she charged him with the paternity of the child; that he had left her on the streets of Jefferson telling her not to come back home until her child was born, and not to bring it with her, but to give it to some one else; that defendant denied all these statements, etc.; that defendant said that his stepdaughter had miscarried, etc.

*M. W. Reavis* and *L. S. Schluter,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted for destroying the life of a child during parturition, his punishment being fixed at five years confinement in the penitentiary. We do not deem it necessary to review but one question. In our opinion, the evidence is wholly insufficient to support the conviction. It fails to show with any degree of satisfaction or conclusiveness that the child was born alive, or was alive at the inception of its birth. Without such proof, the evidence is not sufficient to sustain the conviction. The evidence being insufficient, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Davidson, Presiding Judge, absent.